IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**BRITTANY DAWN JEFFREY**                                                                                                                **PLAINTIFF**

v.                                       Case No. 4:24-cv-00128-LPR

**JALEN SALAAM,** *in his individual and*
*official capacity*; **ZACHARY NELSON,**
*in his individual and official capacity*; **and**
**KEITH HUMPHREY,** *in his official capacity*
*as Little Rock Police Department, Chief of Police*                                                       **DEFENDANTS**

## ORDER

Pending before the Court is a fairly discrete Motion to Dismiss.[1] The named Defendants—three police officers employed by the City of Little Rock—seek dismissal of the official-capacity claims brought against them.[2] Defendants' Motion is GRANTED.

The official-capacity claims against the three Little Rock police officers are treated as claims against the City of Little Rock.[3] Each such claim is brought under 42 U.S.C. § 1983 or the Arkansas Civil Rights Act.[4] And the City can't be held liable under either of those statutes on a *respondeat superior* theory.[5] So, even assuming one or more officers engaged in conduct that violated the United States Constitution or the Arkansas Constitution, something more is necessary

---

[1] Doc. 23.

[2] *Id.* The three named Defendants do not seek dismissal of the individual-capacity claims against them. *See id.*

[3] *See Rogers v. City of Little Rock*, 152 F.3d 790, 800 (8th Cir. 1998) (first citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978); and then citing *Marchant v. City of Little Rock*, 741 F.2d 201, 204 (8th Cir. 1984)) (holding that an official-capacity suit against a city police officer and the chief of the city police department was "another form of action against the city").

[4] First Am. Compl. (Doc. 18) at 8–20.

[5] *See Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."); *see also Jones v. Huckabee*, 369 Ark. 42, 49, 250 S.W.3d 241, 246 (2007) ("[T]he doctrine of *respondeat superior* is not a basis for liability under the Arkansas Civil Rights Act . . . .").

to state viable § 1983 or ACRA claims against the City. Whether Ms. Jeffrey has adequately alleged "something more" is discussed below.

I.      **Custom, Policy, or Practice**

A city can be held liable under § 1983 if the unlawful conduct of a city employee was a result of the city's custom, policy, or practice.[6] To the extent that Ms. Jeffrey was trying to plausibly allege this, she failed to do so. The First Amended Complaint alleges that "Defendant Humphrey and the Little Rock Police Department have implemented [an unwritten] policy, practice, or custom of harassing, threatening, detaining, arresting, and/or citing for lawful speech protected by the First Amendment, while those individuals were on public property – despite the absence of reasonable suspicion that an individual has violated any law."[7] Generally speaking, courts must accept a complaint's allegations of fact as true at the motion-to-dismiss stage.[8] But the above allegation is a textbook example of a conclusory statement that a court need not (and should not) accept as true even at this stage of the proceedings.[9] When the First Amended Complaint's conclusory statements are ignored, there is absolutely nothing to plausibly suggest the existence of a custom, policy, or practice that could have motivated the alleged unlawful actions of Officers Salaam or Nelson.

It is true that the First Amended Complaint alleges that "complaints and notices of First Amendment violations were submitted from protests and protestors prior to the illegal stop of

---

[6] *Johnson v. Blaukat*, 453 F.3d 1108, 1114 (8th Cir. 2006).

[7] First Am. Compl. (Doc. 18) ¶ 40.

[8] *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (citing *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)).

[9] *See id.* The same is true of the First Amended Complaint's statement that "[t]he Little Rock Police Department continues to enforce anti-speech policies . . . ." First Am. Compl. (Doc. 18) ¶ 45.

Ms. Jeffrey."[10] But without more detail—e.g., how many complaints and notices were submitted, whether those complaints and notices were substantiated, to whom the complaints and notices were submitted, and when the complaints and notices were submitted—there's not enough to plausibly suggest the existence of a custom, policy, or practice that could have motivated the alleged unlawful actions of Officers Salaam or Nelson.[11] At this point, we simply have no idea if there were any sufficiently similar prior incidents, let alone enough of them to plausibly suggest the existence of a custom, policy, or practice that would support liability here.

## II.    Failure to Train

In certain circumstances, a city can be held liable if a police officer's unconstitutional conduct can be traced back to the city's failure to train.[12] But the bar for such a claim is pretty high. As the Supreme Court has explained, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[13] In the Eighth Circuit, liability only attaches "where (1) the city's . . . training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by a municipality,' and (3) an alleged deficiency in the city's . . . training procedures actually caused the plaintiff's injury."[14] Accordingly, to prevail on such a claim, "[i]t is necessary to show 'that in light of the duties assigned to specific officers or

---

[10] First Am. Compl. (Doc. 18) ¶ 42.

[11] The First Amended Complaint also states that "[Chief] Humphrey knew and was aware of similar incidents by his subordinates and failed to take corrective actions that would cease the offending conduct." *Id.* ¶ 44. But this allegation doesn't add anything to the mix. First, calling previous incidents "similar" (without any further description of those incidents) is conclusory. Second, by omitting information about how many such incidents occurred, this allegation fails to plausibly suggest a custom, policy, or practice.

[12] *See Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

[13] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[14] *See Andrews*, 98 F.3d at 1076 (citation omitted) (quoting *City of Canton*, 489 U.S. at 389).

employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'"[15]

Many of the statements in the First Amended Complaint make it less than clear whether Ms. Jeffrey is alleging that (1) Officers Salaam and Nelson received no training at all on the First and Fourth Amendment or (2) the training they did receive was insufficient. From the language in paragraphs 39–44, either reading would be reasonable.[16] The Court resolves this ambiguity by taking Ms. Jeffrey at her word in paragraph 103, which appears to summarize her previous allegations on this point: "On information and belief, Defendants Nelson and Salaam *have not received training* related to the First Amendment and *have no[t] received sufficient training* on the requirements of probable cause and the Fourth Amendment."[17] Based on this statement, the Court concludes that Ms. Jeffrey is alleging that Officers Salaam and Nelson had no First Amendment training at all, but did receive training—albeit allegedly insufficient training—on the requirements of probable cause and the Fourth Amendment.[18]

The probable cause/Fourth Amendment training issue is easily resolved. The First Amended Complaint makes several statements characterizing the probable cause/Fourth Amendment training given to Officers Salaam and Nelson as insufficient or improper or

---

[15] *Id.* (quoting *City of Canton*, 489 U.S. at 390).

[16] *See* First Am. Compl. (Doc. 18) ¶¶ 39–44.

[17] *Id.* ¶ 103 (emphasis added).

[18] The Court acknowledges that, in paragraph 52, the First Amended Complaint alleges that "Defendant Salaam previously received some level of training and education on civil rights, including the First Amendment." *Id.* ¶ 52. To the extent the First Amended Complaint is not asserting a total lack of training in the First Amendment area but is instead asserting an insufficiency in the First Amendment training given, such a claim fails for the same reasons the Court sets out below with respect to the probable cause/Fourth Amendment inadequate-training claim.

4

inadequate.[19] All such statements are conclusory in nature, and the First Amended Complaint provides no actual facts to support these conclusory statements. Given Ms. Jeffrey's failure to plead any actual facts, this portion of the claim doesn't state a viable cause of action.

The First Amendment training issue is a little different. That is because the First Amended Complaint alleges a total lack of First Amendment training (as opposed to an insufficiency in the training given).[20] This constitutes an allegation of historical fact that must—at this stage—be accepted as true by the Court. Even so, things don't look good for this claim. That's because "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."[21] And the First Amended Complaint does not allege any prior conduct on the part of Officers Nelson or Salaam that would have put the City on notice of the need for any (or additional) First Amendment training.

Indeed, there are no allegations of relevant prior conduct on the part of Officer Nelson at all. And with respect to Officer Salaam, the First Amended Complaint merely alleges that "Officer Salaam had had prior incidents and violations . . . ."[22] The First Amended Complaint does not say anything about the nature of such incidents.[23] Without such detail, there's nothing to plausibly

---

[19] *See, e.g., id.* ¶ 43 ("Officer[s] Salaam and Nelson did not receive sufficient training on the necessary elements to effect a seizure of a citizen."); *id.* ¶ 103 ("Defendants Nelson and Salaam . . . have no[t] received sufficient training on the requirements of probable cause and the Fourth Amendment.").

[20] *Id* ¶ 103. Although the Court is required to accept fact allegations pled in a complaint, the Court notes that a defendant is not without recourse where a plaintiff pleads facts that it knows are untrue or are very unlikely to be true. *See, e.g.,* Fed. R. Civ. P. 11(b)(3).

[21] *Connick*, 563 U.S. at 62 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

[22] First Am. Compl. (Doc. 18) ¶ 44.

[23] At absolute most, one could stitch together different parts of paragraph 44 of the First Amended Complaint to suggest that the prior incidents were "similar" to the present incident. *See id.* But that's a real stretch. And, in any event, calling incidents "similar" is a conclusion, not a well-pled fact.

It is true that Exhibit C to the First Amended Complaint tells us that, as of February 25, 2021 (two days after the incident in question), "Officer Salaam's disciplinary history" included the receipt of "official departmental discipline six (6) times in the last twelve (12) months." Ex. C (Davis Memorandum) to First Am. Compl. (Doc. 18) at 28. But

suggest that the City was on notice of some specific need for Officers Salaam and Nelson to receive First Amendment training.

But that is not the end of the story. The First Amended Complaint appears to hint at another way in which the City may have been put on notice of the need for First Amendment training. The crux of this argument is that prior incidents involving officers other than Nelson and Salaam were frequent enough to place the City on notice that all of its officers needed First Amendment training. In this vein, the First Amended Complaint alleges that "complaints and notices of First Amendment violations were submitted from protests and protestors prior to the illegal stop of Ms. Jeffrey."[24] But the First Amended Complaint does not provide any details. Without more detail—e.g., how many complaints and notices were submitted, whether those complaints and notices were substantiated, to whom the complaints and notices were submitted, and when the complaints and notices were submitted—there's not enough to plausibly suggest that the City was on notice of some department-wide need for First Amendment training.[25]

The failure to adequately allege facts to show prior First Amendment violations by Officers Salaam and Nelson (or even by other officers in the Little Rock Police Department) all but dooms the portion of Ms. Jeffrey's failure-to-train claim related to the First Amendment. Still, for the sake of completeness, it is worth noting that the Supreme Court has—at least hypothetically—recognized that there might be "a narrow range of circumstances" wherein "a pattern of similar

---

nothing tells us what kind of violations led to this discipline. So, there is nothing to suggest that any of these past violations involved conduct similar to what occurred with Ms. Jeffrey.

[24] First Am. Compl. (Doc. 18) ¶ 42.

[25] To the extent Ms. Jeffrey relies on the statement that "[Chief] Humphrey knew and was aware of similar incidents by his subordinates," the phrase "similar incidents" is conclusory. *Id.* ¶ 44. And the First Amended Complaint fails to plead crucial facts such as the number of incidents of which Chief Humphrey was aware, when those incidents occurred, and what happened in those incidents.

violations might not be necessary to show deliberate indifference."[26] And Ms. Jeffrey may be trying to fit her failure-to-train-on-the-First Amendment claim into this hypothesized exception to the "ordinarily necessary" pattern-of-similar-constitutional-violations requirement.[27] To the extent Ms. Jeffrey is making this argument, the Court will now explain why the argument fails.

To justify the hypothesized exception to the "ordinarily necessary" pattern-of-similar-constitutional-violations requirement, the Supreme Court imagined a scenario in which "a city . . . arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force."[28] Here's the take-away of that imagined scenario:

> Given the known frequency with which police attempt to arrest fleeing felons and the "predictability than an officer lacking specific tools to handle that situation will violate citizens' rights," the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of constitutional rights. The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations.[29]

The most obvious principle to come from the foregoing is that if the need for training is not patently obvious, then failure-to-train liability only attaches where a pattern of similar constitutional

---

[26] *Connick*, 563 U.S. at 63 (2011) (quoting *Brown*, 520 U.S. at 409). This hypothetical exception to the "ordinarily necessary" pattern-of-similar-constitutional-violations requirement arose in *dicta* in *City of Canton*. *See* 489 U.S. at 390, 390 n.10. It was then repeated as *dicta* in *Brown* and *Connick*. *See Brown*, 520 U.S. at 409; *Connick*, 563 U.S. at 63–64. Although this exception has never taken the form of a Supreme Court holding, the best read of the Eighth Circuit precedent is that the Eighth Circuit has adopted the exception. *See Andrews*, 98 F.3d at 1077 ("In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women."). *But see Garcia v. City of New Hope*, 984 F.3d 655, 670–71 (8th Cir. 2021) (not discussing the patently-obvious exception in setting out the standard for failure-to-train claims), *recognized as abrogated on other grounds*, *Laney v. City of St. Louis*, 56 F.4th 1153, 1157 n.2 (8th Cir. 2023).

[27] Ms. Jeffrey never quite makes this argument, but it might be generously implied from the First Amended Complaint and her Response to Defendants' Motion to Dismiss. *Cf.* First Am. Compl. (Doc. 18) ¶ 39; Resp. in Opp'n to Mot. to Dismiss (Doc. 25) at 5.

[28] *Connick*, 563 U.S. at 63 (citing *Canton*, 489 U.S. at 390 n.10).

[29] *Id.* at 63–64 (quoting *Brown*, 520 U.S. at 409).

violations has been shown. But the Eighth Circuit has drawn an additional principle from this line of Supreme Court cases. As explained by Judge Pitlyk from the Eastern District of Missouri:

> A city is not liable for a failure to train its officers to refrain from engaging in manifestly unlawful acts. The more obvious the wrong, the less obvious the need to train officers not to do it. That is why it is essential for a city to train officers about when the use of deadly force is appropriate to stop a fleeing felon, but it is not necessary for a city to train its officers not to commit sexual assaults.[30]

The question for the instant Motion is whether the failure to train alleged by Ms. Jeffrey falls within the goldilocks zone established by the caselaw. The potential for misconduct in the absence of training must be patently obvious. But, at the same time, the misconduct at issue cannot be too obviously wrong—because then a reasonable officer would not need training on the point.

Under this rubric, Ms. Jeffrey's failure-to-train claim cannot survive. The First Amended Complaint alleges that (1) Ms. Jeffrey gave the middle finger to Officer Salaam as she was driving by him, and (2) solely in retaliation for this conduct, Officer Salaam pulled Ms. Jeffrey over, detained her, handcuffed her, and repeatedly struck her. Assuming these allegations are true, Officer Salaam's conduct (and Officer Nelson's acquiescence to and assistance in that conduct) was so obviously wrong that training on the point was unnecessary absent a pattern of similar constitutional violations. To be sure, this case presents a closer call than the sexual-assault cases do. But the First Amendment's protection of a citizen that uses the middle finger (like its protection of a citizen that says "I hate cops") is still pretty darn elementary. Ultimately, in the Court's view, even without training, "[a]ny reasonable officer would know that a citizen who raises [the] middle finger engages in speech protected by the First Amendment."[31] And if that is so, then only a pattern

---

[30] *Gray v. City of St. Louis*, No. 18-cv-01678, 2025 WL 961739, at *7 (citations omitted). *See also Andrews*, 98 F.3d at 1077 ("In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women.").

[31] *Cf. Garcia*, 984 F.3d at 670 (quoting *Cruise-Gulyas v. Minard*, 918 F.3d 494, 497 (6th Cir. 2019)); *see also Thurairajah v. City of Fort Smith*, 925 F.3d 979, 982, 985 (8th Cir. 2019) (holding that the right to be free from retaliatory arrest for yelling "fuck you" at a police officer was "clearly established" such that all reasonable officers

of similar constitutional violations could put the City on notice of the need for training on the point such that a failure to train would be actionable.[32] Any other decision risks contravening Supreme Court precedent by having the patently-obvious exception swallow the more general rule:

> As our precedent makes clear, proving that a municipality itself actually caused a constitutional violation by failing to train the offending employee presents "difficult problems of proof," and we must adhere to a "stringent standard of fault," lest municipal liability under § 1983 collapse into *respondeat superior*.[33]

Long story short, Ms. Jeffrey's failure-to-train claims can't survive the Motion to Dismiss.

### III.    Failure to Supervise

To the extent the failure-to-supervise claim is just a failure-to-train claim by another name,[34] the claim fails for the reasons set out above. To the extent Ms. Jeffrey is alleging some supervisory failure that is distinguishable from the alleged lack of training, the claim also fails. As the Court has essentially explained in another portion of this Order (albeit in a slightly different context), the First Amended Complaint fails to plead facts which plausibly suggest that Officers Salaam or Nelson engaged in past misconduct requiring more or different supervision.[35] There's nothing in the First Amended Complaint which would plausibly suggest that the assertedly

---

would know such an arrest was unlawful). The Court acknowledges, of course, that training on a particular aspect of a right may be necessary even if that aspect of the right is clearly established for purposes of qualified immunity.

[32] This conclusion is consistent with the Eighth Circuit's 2021 decision in *Garcia*. In that case, a police officer pulled over a citizen after that citizen had given the middle finger to the officer. *Garcia*, 984 F.3d at 660. The Eighth Circuit concluded that the City of New Hope was not liable on a failure-to-train theory because (1) "[a] failure to train claim requires evidence that 'the municipality received notice of a pattern of unconstitutional acts committed by its employees,'" and (2) there was no such evidence presented in that case. *Id.* at 670–71. Although it is not clear whether and to what extent the parties pressed the exception discussed here, the panel's conspicuous omission of any discussion of the exception suggests it does not apply to the middle-finger scenario.

[33] *Connick*, 563 U.S. at 70 (quoting *Brown*, 520 U.S. at 406, 410).

[34] *See Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998) ("[B]oth [failure-to-train and failure-to-supervise] claims ultimately require the same analysis.").

[35] *See supra* pp. 5–6. The closest Ms. Jeffrey gets to such an allegation is the facts set out in Exhibit C of the First Amended Complaint. *See supra* note 23. But, as previously explained, it is not enough that Officer Salaam had been subject to official disciplinary actions six times over the 12-month period immediately prior to the incident with Ms. Jeffrey. That is because we do not know the nature or seriousness of the violations that led to the disciplinary actions, nor do we know what disciplinary actions were taken to address the violations. *See id.*

unconstitutional acts visited upon Ms. Jeffrey were a result of the City failing to correct past conduct or failing to discipline or fire the officers prior to the incident at issue in this case.

\* \* \*

For the foregoing reasons, all the official-capacity claims brought in the First Amended Complaint are dismissed without prejudice. Given the liberal standards of Federal Rule of Civil Procedure 15, however, the Court agrees with Ms. Jeffrey that she should have one further chance to amend her operative Complaint. Accordingly, within 14 days of the date of this Order, Ms. Jeffrey may seek leave to file an Amended Complaint if she believes she can remedy the deficiencies noted in today's Order.[36] Such a request must comply with all relevant Federal Rules of Civil Procedure and all relevant Local Rules.

IT IS SO ORDERED this 23rd day of May 2025.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[36] The Court does not address the discovery-related request embedded in Ms. Jeffrey's Response to the Motion to Dismiss. *See* Resp. in Opp'n to Mot. to Dismiss (Doc. 25) at 4. If Ms. Jeffrey desires some sort of discovery to which she is not otherwise entitled under the normal course of events in this case, she needs to make such a request by way of a motion that complies with all relevant Federal Rules of Civil Procedure and all relevant Local Rules.